UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DANIEL JAMES V.¹,

                              Plaintiff,

-v-

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.
_____

1:20-CV-01826-MJR
DECISION AND ORDER

Pursuant to 28 U.S.C. § 636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case. (Dkt. No. 10)

Plaintiff Daniel James V. brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying him Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

For the following reasons, plaintiff's motion (Dkt. No. 7) is denied and the Commissioner's motion (Dkt. No. 8) is granted.

## BACKGROUND²

Plaintiff protectively filed an application for DIB on May 18, 2018, alleging disability beginning January 12, 2018 due to status-post two hernia surgeries; bilateral shoulder

---

¹ In accordance with the November 18, 2020 Standing Order, issued by the Hon. Frank P. Geraci, Jr., Chief Judge of the United States District Court for the Western District of New York, this Decision and Order will identify plaintiff using only his first name and last initial.

² The Court assumes the parties' familiarity with plaintiff's medical history, which is summarized in the moving papers. The Court has reviewed the medical record but cites only the portions of it that are relevant to the instant decision.

pain and surgery; status-post surgery to repair a torn bicep; osteoarthritis in the hands and feet; left hip pain; and elevated blood pressure. (*See* Tr. 151-53, 161)[3] Plaintiff's disability benefits application was initially denied on August 22, 2018. (Tr. 79-92) Plaintiff timely filed a written request for a hearing, and on January 7, 2020, a hearing was held before Administrative Law Judge Scot Gulick. (Tr. 28-60) Plaintiff, who was represented by counsel, testified at the hearing. (*Id.*) ALJ Gulick also received testimony from a vocational expert. (*Id.*) On February 4, 2020, ALJ Gulick issued a decision finding that plaintiff was not disabled under the Act. (Tr. 11-22) The Appeals Council denied plaintiff's request for review of the ALJ's determination on November 10, 2020, and this action followed. (Tr. 1-6)

Born on May 30, 1963, plaintiff was 54 years old on the alleged disability onset date. (Tr. 21, 32) He has a high school education, is able to communicate in English, and has prior relevant work experience as a production supervisor. (Tr. 20-21, 32-33)

## DISCUSSION

I.   *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential. Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v.*

---

[3] References to "Tr." are to the administrative record in this case.

*Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (*quoting Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

   II.   <u>Standards for Determining "Disability" Under the Act</u>

A "disability" is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). The Commissioner may find the

claimant disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* §423(d)(2)(A). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (*quoting Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §404.1520(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §404.1520(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §404.1520(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.* Third, if the claimant does

have a severe impairment, the Commissioner asks two additional questions: first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1.  *Id.* §404.1520(d). If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience.  *Id.*

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five. Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record. *Id.* §404.1520(e). RFC "is the most [the claimant] can still do despite [his or her] limitations." *Id.* §404.1545(a)(1). The Commissioner's assessment of the claimant's RFC is then applied at steps four and five.  At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." *Id.* §404.1520(f). If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act. *Id.* Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work." *Id.* §404.1520(g)(1). If the claimant can adjust to other work, he or she is not disabled. *Id.* If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act. *Id.*

The burden through steps one through four described above rests on the claimant. If the claimant carries their burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

III.    *The ALJ's Decision*

The ALJ first found that plaintiff meets the insured status requirements of the Act through June 30, 2023. (Tr. 16) The ALJ then followed the required five-step analysis for evaluating plaintiff's claim. Under step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since his alleged disability onset date of January 12, 2018. (*Id.*) At step two, the ALJ found that plaintiff has the severe impairments of degenerative disc disease of the lumbar spine; arthritis in the hands and feet; and hypertension. (Tr. 16-17) Also at step two, the ALJ concluded that plaintiff has the non-severe impairments of major depressive disorder; panic disorder; generalized anxiety; and alcoholism. (*Id.*) At step three, the ALJ determined that plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (Tr. 17) Before proceeding to step four, the ALJ found that:

> [T]he claimant had the residual functional capacity to perform light work, as defined in 20 CFR 404.1567(b), including the ability to carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk for up to 6 hours in an 8 hour workday, and sit for up to 6 hours in an 8 hour workday. The claimant can operate foot controls with right foot occasionally and his left foot occasionally. He can frequently reach overhead to the left and to the right. For all other reaching, he can reach frequently to the left and to the right. He can handle items, finger and feel frequently with both hands. The claimant can climb ramps, stairs, ladders, ropes or scaffolds, and balance frequently. The claimant can frequently work at unprotected heights, around moving mechanical parts, in extreme cold, and in vibration.

(Tr. 17-20) Proceeding to step four, the ALJ found that plaintiff was capable of performing his past relevant work as a production supervisor. (Tr. 20-21) In the alternative, at step five, the ALJ considered plaintiff's age, education and RFC and found that there are jobs that exist in significant numbers in the national economy that plaintiff can perform, such as safety inspector, quality control technician, and job analyst. (Tr. 21-22) The ALJ ultimately concluded that plaintiff has not been under a disability, as defined by the Act, from the alleged onset date, January 12, 2018, through the date of the decision, February 4, 2020. (Tr. 22)

    IV.    <u>Plaintiff's Challenges</u>

Plaintiff argues that the RFC is not supported by substantial evidence because the ALJ erroneously relied on the opinion of Dr. Hongbiao Liu, the consultative examiner, which was both vague and inconsistent with the RFC. (*See* Dkt. No. 7-1 (Plaintiff's Memo. of Law)) For the following reasons, the Court disagrees.

Dr. Liu performed a consultative physical examination of plaintiff on July 17, 2018. (Tr. 292-95) At the conclusion of the examination, Dr. Liu opined, among other things, that plaintiff has a "mild to moderate limitation for prolonged walking." (Tr. 295) The ALJ found all of Dr. Liu's opinions, including his opinion as to plaintiff's ability to walk for prolonged periods of time, to be "generally persuasive." (Tr. 20) The ALJ further observed that although Dr. Liu's opinions were "somewhat vague, as they [did] not give specific functional limitations," they were consistent with an RFC for light work with some postural and manipulative limitations. (Tr. 20)

Plaintiff contends that the RFC is inconsistent with Dr. Liu's opinion since "[m]oderate limitations in prolonged standing, or a need for a sit/stand option, have been

found inconsistent with light work." (Dkt. No. 7-1, pg. 9)[4] However, Dr. Liu did not find that plaintiff has a moderate limitation for prolonged standing, nor did he find that plaintiff requires a sit/stand option. Instead, Dr. Liu determined that plaintiff has a mild to moderate limitation for prolonged walking. Indeed, the Second Circuit, as well as district courts within this Circuit, have concluded that individuals, like plaintiff, with mild to moderate limitations for walking, can perform the requirements of light work. *See e.g., Snyder v. Saul*, 840 F. App'x 641, 643 (2d Cir. 2021) (concluding that opinions assessing only moderate limitations in several physical activities including walking supported an RFC finding for light work); *Harrington v. Colvin*, 14-CV-6044, 2015 U.S. Dist. LEXIS 22357 (W.D.N.Y. Feb. 25, 2015) (consultative examiner's opinion that plaintiff was limited in his ability to walk for prolonged periods was not inconsistent with an RFC that plaintiff could sit, stand, and walk for six hours a day respectively and supported a finding of light or medium work); *Nelson v. Colvin*, 12-CV-1810, 2014 U.S. Dist. LEXIS 46630 (E.D.N.Y. Mar. 31, 2014) ("the ALJ's determination that [p]laintiff could perform 'light work' is supported by [doctor's] assessment of 'mild to moderate limitation for sitting, standing, walking, bending, and lifting weight on a continued basis'") (*citing Lewis v. Colvin,* 548 F. App'x 675, 678 (2d Cir. 2013)). *See also Hazelwood v. Comm'r of Soc. Sec.*, 6:12-CV-798, 2013 U.S. Dist. LEXIS 111095 (N.D.N.Y. May 7, 2013); *adopted at* 2013 U.S. Dist. LEXIS 111095 (doctor's opinion that plaintiff had "mild to moderate limitations in walking, pushing and pulling" supported the "ALJ's determination that plaintiff could physically perform light work"); *Carpenter v. Astrue*, 09-CV-0079, 2010 U.S. Dist. LEXIS 60418

---

[4] Dr. Liu also found that plaintiff had a mild to moderate limitation for prolonged bending, kneeling, and overhead reaching. (Tr. 295) However, plaintiff only challenges the portion of Dr. Liu's opinion related to plaintiff's limitation for prolonged walking as being inconsistent with the RFC. (Dkt. No. 7-1, pgs. 8-9)

8

(W.D.N.Y. June 18, 2010) (consultative examiner's opinion that plaintiff was moderately limited in prolonged standing, walking, kneeling and climbing was consistent with ALJ's conclusion that plaintiff could perform light work). Thus, Dr. Liu's opinion that plaintiff had a mild to moderate limitation for prolonged walking was not inconsistent with the RFC.

Moreover, an ALJ is entitled to weigh all of the evidence and make an RFC finding that corresponds with the record as a whole. *Snyder*, 840 Fed. Appx. at 643. The ALJ correctly did so here. The decision reflects that, in determining the RFC, the ALJ considered not only Dr. Liu's opinion, but also additional evidence in the record, medical and otherwise. Therefore, even if Dr. Liu's opinion is to be construed as vague, the ALJ still went on to support his RFC determination with other substantial and specific evidence from the record.

Light work requires approximately 6 hours of standing and/or walking during an 8-hour workday. *See* 20 C.F.R. § 416.967(b)-(c); *Mancuso v. Astrue*, 361 F. App'x 176, 178 (2d Cir. 2010) ("[l]ight work requires the ability to lift up to 20 pounds occasionally, lift 10 pounds frequently, stand and walk for up to 6 hours a day, and sit for two hours."). Here the ALJ provided reasons "tending to support the finding that, despite the [mild to] moderate limitations [in prolonged walking]...[plaintiff] could still perform [light] work." *See Carroll v. Colvin*, 13-CV-456, 2014 U.S. Dist. LEXIS 88819 (W.D.N.Y. June 30, 2014). For example, the ALJ credited Dr. Liu's opinion which, as noted above, supports a finding that, despite some limitations in prolonged walking, plaintiff has the ability to perform light work. The ALJ also credited the findings of State agency medical consultant Jay Shaw, M.D. (Tr. 20) Dr. Shaw reviewed the record evidence, including Dr. Liu's report, and specifically found that plaintiff could occasionally lift and/or carry 20 pounds, frequently

9

lift and/or carry 10 pounds, stand and/or walk for about 6 hours in an 8-hour workday, and sit for about 6 hours in an 8-hour workday. (Tr. 20, 480) The ALJ then proceeded to include these specific functional limitations assessed by Dr. Shaw in the RFC. "It is well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability." *House v. Comm'r of Soc. Sec.*, 32 F. Supp. 3d 138, 151-52 (N.D.N.Y. 2012); *accord* 20 C.F.R. §404.1527(f). *See also Micheli v. Astrue*, 501 F. App'x 26, 29 (2d Cir. 2012) (finding that opinion of state agency physician provided substantial evidence to support ALJ's RFC finding).

The ALJ also supported his determination that plaintiff could sit, stand, or walk for 6 hours a day respectively with citations to plaintiff's medical records and treatment notes. (Tr. 18-19) (ALJ noting that the objective medical evidence did not support a finding of severe disabling limitations) The ALJ indicated that an MRI of plaintiff's lumbar spine in 2018 was negative other than minor annular bulging. (Tr. 18, 224) The ALJ expressly noted that while X-rays of plaintiff's feet revealed heel spurs and early arthritis of the large left toe, Dr. Liu found that plaintiff had a normal gait. (Tr. 19, 271-72, 293) The ALJ also recognized that the consultative exam revealed that while plaintiff had slightly reduced range of motion in flexion of the lumbar spine and shoulders as well as positive straight leg raise test at 25 degrees bilaterally, he had full range of motion in his hips, knees and ankles bilaterally. (Tr. 19, 293) The consultative exam also showed that plaintiff had full flexion in his spine and that his joints were stable and nontender. (Tr. 294) The ALJ considered that X-rays of plaintiff's lumbar spine, pelvis, and hips in 2019 were normal, and that plaintiff's physical examinations showed no significant joint deformities, synovitis,

or edema. (Tr. 19, 318, 346, 459, 475-76) Finally, the ALJ cited records from a treating rheumatologist, who found that, despite an extensive work-up, plaintiff had no significant findings of arthritis. (Tr. 19, 317-18)

Other substantial evidence in the record, also cited by the ALJ, further supported the conclusion that plaintiff could meet the walking, sitting, and standing demands of light work as described in the RFC. For example, the ALJ reasoned that plaintiff's conservative course of treatment suggested that his physical impairments were not so severe as to render him disabled from all work. (Tr. 19) The ALJ recognized that plaintiff has previously taken over-the-counter pain medications and has participated in chiropractic treatment as well as acupuncture. (*Id.*) However, no doctor has recommended surgery or more extensive treatment for plaintiff's pain, other than certain additional medications, which plaintiff has refused to take. (*Id.*)  See *Snyder*, 840 Fed. App'x at 643 (conservative treatment may weigh against a disability finding); *Penfield v. Colvin*, 563 Fed. App'x 839, 840 (2d Cir. 2013) (evidence of a conservative treatment regimen supported the ALJ's determination that plaintiff's symptoms were not as severe as she alleged).

Lastly, the ALJ's assessment that plaintiff was capable of performing light work, including his ability to walk, sit or stand in conformity with the RFC, was supported by plaintiff's own statements concerning his abilities and his range of activities of daily living. For example, the ALJ considered that plaintiff went walking in his yard daily, went shopping for groceries weekly, attended church services, and visited with friends. (Tr. 18-19; 178-82) Plaintiff also acknowledged that he was able to vacuum, dust, do laundry, prepare simple meals, and load the dishwasher. (*Id.*) See 20 C.F.R. § 416.929(c)(3) (a claimant's "pattern of daily living" is an "important indicator of the intensity and persistence

of [the claimant's] symptoms"); *Prue v. Comm'r of Soc. Sec.*, 2:13-CV-13, 2014 U.S. Dist. (D. Vt. 2014) ("[i]t was proper for the ALJ to consider [plaintiff's] daily activities in determining his RFC"). The ALJ further observed that no treating physician has indicated that plaintiff cannot work due to his physical impairments. (Tr. 19) In fact, the ALJ noted that, in April 2018, plaintiff informed his treating physician that he was seeking part-time, less stressful employment and that he enjoyed working and being busy. (Tr. 19, 336)

For all of these reasons, the ALJ did not err in relying upon the opinion of Dr. Liu, nor was Dr. Liu's opinion inconsistent with the RFC. Moreover, the physical RFC assessed by the ALJ was both reasonable and supported by substantial evidence in the record.

Plaintiff next argues that the RFC is not supported by substantial evidence because the ALJ erred by finding, at step two, that plaintiff's mental limitations were non-severe and by failing to include any mental limitations in the RFC. (*See* Dkt. No. 7-1 (Plaintiff's Memo. of Law)) For the following reasons, the Court disagrees.

An impairment is not severe if the medical evidence establishes only a slight abnormality which would have no more than a minimal effect on a plaintiff's ability to perform basic work activities. *See Goettel v. Comm'r of Soc. Sec'y*, 18-CV-1285, 2019 U.S. Dist. LEXIS 197768 (W.D.N.Y. Nov. 14, 2019); *accord* 20 C.F.R. § 404.1521(a). Here, the ALJ recognized plaintiff's medically determinable mental impairments of major depressive disorder, adjustment disorder with anxiety, panic disorder, generalized anxiety disorder, and alcoholism, and found that, considered singularly and in combination, these impairments did not cause more than minimal limitation in plaintiff's ability to perform basic work activities, and were therefore non-severe. (Tr. 16-17) In reaching this

conclusion, the ALJ correctly considered the four broad areas of functioning commonly referred to as the "paragraph B" criteria and determined that plaintiff had no limitation in understanding, remembering, or applying information; no limitation in interacting with others; mild limitation in concentrating, persisting, or maintaining pace; and mild limitation in adapting or managing oneself. (Tr. 16-17) In support of this assessment, the ALJ cited treatment records indicating that plaintiff's depression was controlled and that his alcoholism was in remission. (*Id.*) The ALJ further noted that plaintiff did not take any psychotropic medication and that he was not regularly receiving therapy. (*Id*) The ALJ also relied on a consultative psychologist finding that plaintiff had no more than mild mental limitations that did not interfere with his ability to function and that a state agency psychologist opinion that plaintiff had no severe mental limitations. (*Id.*) Thus, contrary to plaintiff's averments, the ALJ provided a thorough analysis to support his step two determination and did not err in finding that plaintiff's mental health conditions were non-severe. *See Wilkins v. Comm'r of Soc. Sec.*, 18-CV-67, 2019 U.S. Dist. LEXIS 100486 (W.D.N.Y. June 17, 2019) (an examiner's opinion that a claimant has a "mild" limitation in an area is "consistent with [a] finding of nonseverity.").

Even though the ALJ reasonably concluded that plaintiff's mental limitations were non-severe, plaintiff is correct that the ALJ was still required to consider those limitations when formulating the RFC. *See Parker-Grose v. Astrue*, 462 Fed. App'x 16, 18 (2d Cir. 2012) ("An RFC determination must account for limitations imposed by both severe and non-severe impairments."); 20 C.F.R. § 404.1545(a)(2). The ALJ properly followed this directive here. At the conclusion of his step two findings, the ALJ acknowledged that his paragraph B analysis was insufficient to satisfy his obligation to determine plaintiff's RFC,

and that steps four and five of the sequential process required a more detailed analysis of how plaintiff's mental impairments may affect his ability to work. (Tr. 17) The ALJ also noted that the RFC incorporated the degree of limitation he assessed in the paragraph B mental functional analysis performed at step two. *Id.* The ALJ then went on to consider plaintiff's non-severe mental impairments in his RFC analysis. (Tr. 19-20) This discussion included the ALJ's evaluation of medical opinion evidence as well as citations to other evidence in the record which supported a finding that plaintiff possessed no more than mild limitations in any area of mental functioning. (*Id.*) As a result of this analysis, the ALJ appropriately elected not to include any mental limitations in the RFC. *See Lynette W. v. Comm'r of Soc. Sec'y*, 19-CV-1168, 2021 U.S. Dist. LEXIS 44015 (W.D.N.Y. March 9, 2021) (even though mild limitations may cause functional restrictions, such limitations do not necessarily compel the inclusion of mental limitations in the RFC.); *Katherine R. v. Comm'r of Soc. Sec'y*, 20-CV-1055, 2021 U.S. Dist. LEXIS 229398 (W.D.N.Y. Nov. 30, 2021) ("[w]here, as here, an ALJ's findings of only mild limitations in mental functioning are supported by substantial evidence in the record, the ALJ is not required to include mental limitations or restrictions in the RFC.").

The Court rejects plaintiff's argument that the ALJ's decision to omit mental restrictions from the RFC was not supported by substantial evidence. Dr. Susan Santarpia, Ph.D. performed a mental consultative examination of plaintiff on July 17, 2018. (Tr. 507-11) She opined that plaintiff was mildly limited in regulating emotions, controlling behavior, and managing well-being. (Tr. 509-10) She further opined that plaintiff presented as being able to understand, remember, and apply simple as well as complex directions and instructions; use reason and judgment to make work-related

14

decisions; interact adequately with supervisors, co-workers and the public; sustain concentration and perform a task at a consistent pace; sustain an ordinary routine and regular attendance at work; maintain personal hygiene and appropriate attire; and be aware of normal hazards and take appropriate precautions within normal limits. (*Id.*) Dr. Santarpia found that while the results of her evaluation appeared to be consistent with psychiatric problems, those problems, "did not appear to be significant enough to interfere with [plaintiff's] ability to function on a daily basis." (*Id.*) The ALJ found Dr. Santarpia's opinion of only mild mental limitations to be generally persuasive. (Tr. 20) The ALJ further noted that State agency psychological consultant K. Lieber-Diaz, Psy.D. evaluated the evidence of record on August 8, 2018 and found that plaintiff exhibited no limitation in his ability to understand, remember, and/or apply information; no limitation in his ability to interact with others; mild limitation in his ability to concentrate, persist or manage pace; and mild limitation in his ability to manage himself. (Tr. 17, 66) The ALJ correctly observed that Dr. Lieber-Diaz's opinion was consistent with Dr. Santarpia's opinion that plaintiff suffered from, at most, some mild mental limitations. (Tr. 20) *See Katherine R.*, 2021 U.S. Dist. LEXIS 229398, *22 (the ALJ's decision not to include any mental limitations in the RFC was supported by substantial evidence where ALJ reviewed mental health records indicating no more than mild limitations in any area of mental functioning when fashioning the RFC); *Jane M.A. v. Comm'r of Soc. Sec.*, 2021 U.S. Dist. LEXIS 3085 (W.D.N.Y. Jan. 7, 2021) (finding that mild limitation in dealing with stress and interacting with others did not require limitations in the RFC).

The ALJ cited additional record evidence in support of the conclusion that plaintiff suffered from, at most, mild mental limitations which did not preclude him from performing

work in accordance with the RFC. For example, the ALJ noted treatment records which reflected that plaintiff's major depressive disorder was controlled and that his alcoholism was in remission. (Tr. 17, 304, 339, 347, 359) The ALJ also considered that plaintiff did not take any psychotropic medications; was not regularly enrolled in therapy or receiving mental health counseling; and has never been hospitalized for any mental health symptoms. (Tr. 16, 20) The ALJ further relied on medical reports indicating that plaintiff demonstrated normal mood and mental status, and that plaintiff himself represented that he did not have any social issues or limitations. (Tr. 20, 339, 342, 344, 346, 356, 358, 456-57, 459) The medical records also showed findings of (1) cooperative behavior and good eye contact; (2) goal directed and logical thought process; (3) intact memory; (4) average fund of knowledge; and (5) intact attention and concentration. (Tr. 325, 328, 331, 334, 508-09) *See Theodore C. v. Comm'r of Soc. Sec.*, 6:20-CV-06482, 2022 U.S. Dist. LEXIS 36058 (W.D.N.Y. Mar. 1, 2022) (no error in ALJ's decision not to include additional restrictions stemming from plaintiff's non-severe impairments of anxiety and depression where the ALJ discussed the evidence related to plaintiff's mental function and analyzed the consistency of plaintiff's statements with the medical evidence).

Lastly, the ALJ did not err in rejecting the opinion of State agency medical consultant Ryan Mendoza, Psy.D. (Tr. 20) Dr. Mendoza found that plaintiff had moderate limitations in several areas of mental functioning, including performing activities within a schedule; maintaining regular attendance and being punctual; interacting appropriately with supervisors, co-workers, and the public; and responding appropriately to changes in the work setting. (Tr. 488-89) The ALJ found that Dr. Mendoza's opinions were inconsistent with other medical opinion evidence in the record, including the prior

administrative findings by Dr. Lieber-Diaz and the findings by consultative examiner Dr. Santarpia. (Tr. 20) The ALJ also found that Dr. Mendoza's opinions were not supported by plaintiff's record of conservative treatment for mental health disorders; unremarkable mental status exams; and plaintiff's own statements regarding his capabilities, daily activities, and lack of social issues. (Tr. 19-20) Therefore, the ALJ properly assessed Dr. Mendoza's opinions under the regulations and provided good reasons for rejecting them. *See* 20 C.F.R. § 404.1520c(c)(2) ("The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."); *Frye ex rel. A.O. v. Astrue*, 485 Fed. App'x 484, 487 (2d Cir. 2012) (summary order) ("The report of a State agency medical consultant constitutes expert opinion evidence which can be given weight *if supported* by medical evidence in the record.") (emphasis added).

Plaintiff bears the burden of proving that his RFC is more restricted than found by the ALJ, whereas the Commissioner need only show that the ALJ's decision was supported by substantial evidence in the record. *See Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009). Further, "[e]ven where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (internal quotation marks omitted). Likewise, it is not enough for plaintiff to point to some evidence in the record to support his position; rather, he must show that "no reasonable factfinder" could have drawn the same conclusions as the ALJ based upon the evidence. *Brault v. Comm'r of Soc. Sec.*, 683

F.3d 443, 448 (2d Cir. 2012). While plaintiff may disagree with the ALJ's RFC finding, he has not shown that he was more mentally restricted than assessed by the RFC nor has he demonstrated that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in the record as to plaintiff's mental impairments.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for judgment on the pleadings (Dkt. No. 7) is denied and defendant's motion for judgment on the pleadings (Dkt. No. 8) is granted.

The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

Dated:   January 9, 2023
         Buffalo, New York

MICHAEL J. ROEMER
United States Magistrate Judge